IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GWENDOLYN T. EMERSON,<br><br>                Plaintiff,<br><br>    v.<br><br>ROBERT L. WILKIE, Secretary<br>United States Department of<br>Veterans Affairs,<br><br>                Defendant. | Case No. 19 C 2586<br><br>Judge Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Gwendolyn Emerson, has filed an eight-count Complaint charging Defendant with (1) age discrimination (Count I); retaliation in violation of the ADEA (Count II); Family and Medical Leave Act ("FMLA") interference (Count III); FMLA retaliation (Count IV); employment discrimination in violation of the Rehabilitation Act (Count V); retaliation in violation of the Rehabilitation Act (Count VI); discrimination in violation of Title VII-Sexual Orientation (Count VII); and retaliation in violation of Title VII-Sexual Orientation (Count VIII). (Dkt. No. 1.)

Plaintiff is employed by the Defendant as an Anesthesia Technician. (Pl.'s Resp. to Def.'s Stmt. of Facts ("PSOF") ¶ 2, Dkt. No. 27.) The Defendant, Secretary of the Department of Veteran

Affairs, is her employer. (*Id.*) The Defendant has moved for summary judgment contending that Plaintiff did not suffer an adverse employment action, Defendant did not act with a discriminatory motive, Defendant did not deny reasonable accommodation, and Defendant did not deny any leave request.

Neither party has filed adequate Statements of Material Facts which makes the job of ruling on Defendant's Motion difficult. The problem with the Statements is that each side has included a host of facts in each's separate Statement that allows the opponent to use a denial to confuse the facts that are admitted from those denied. Nevertheless, the Court will wade through the separate factual statements and supporting documents to determine what are the undisputed facts for the purposes of summary judgment.

## I. **FACTS**

Most of the facts relied upon by the Court in ruling on the present Motion are taken from Plaintiff's deposition that was filed with the Court. (Emerson Dep., Def.'s Stmt. of Facts, Ex. 1, Doc. 23-1.) Plaintiff was asked to describe her disability and she testified that it consisted of "disabling migraines and anxiety and depression." (*Id.* 24:9—10.) Her disability commenced on November 8, 2016, after Plaintiff was struck by an automobile on Agency property that was driven by another Agency employee. (*Id.* 70:2—13, 51:6—9.) As a result of her injury, she has been afflicted

with severe migraine headaches that occurred every day. (*Id.* 41:24–42:3.) These migraines last for a period of 30 minutes to three hours. (*Id.* 29:11–12.) Prescribed medications have reduced the number and severity of the headaches but only for a period of time after which the medications lose their effectiveness. (*Id.* 30:12–41:23.) Her doctor then prescribes different medications. (*Id.*) Over the years she has been prescribed and taken 7 to 8 different medications for her migraines. (*Id.*) At times, her migraines prevent her from performing her duties. (*Id.* 25:13–16.) When she is not having headaches, she is able to perform her duties and life activities in a normal manner. (*Id.* 26:23–27:1.) In fact, her doctor has written several letters on her behalf requesting time off from work but has always appended a statement that she is authorized to return to work "without limitation." (*See, e.g.,* 8/31/2018 Accommodation Request, Def.'s Stmt. of Facts, Ex. 15, Dkt. No. 23-15.)

Plaintiff first made a request for an accommodation in 2017 when she requested her supervisor, Jeff Blakney ("Blakney"), Chief of Anesthesia Technicians, to allow her to rest in a quiet room while she waited for her headache to subside, or, alternatively, to take leave time when the headaches were particularly severe and the medication failed to alleviate her pain. (Emerson Dep. 42:14–47:18.) Since 2016, she has made numerous requests from Blakney to

be allowed to take time off from work and her requests have always been granted and never denied. (*Id.* 43:3–9.) On occasion she has made applications for FMLA leave which likewise have always been granted. (*Id.* 43:10–19.)

Initially her request for a quiet room was not granted because of a lack of availability. (*Id.* 43:20–44:5.) However, Blakney allowed her to go home, or go to the nurse's station to wait for the headache to subside. (*Id.* 53:21–54:8.) Then a room was designated for her use, but Blakney changed his mind because he felt that an obstruction on the floor made it dangerous. (*Id.* 47:19–22.) He also was reluctant to allow her to go home after taking her medication because he was concerned about her ability to drive safely. (*Id.* 54:9–23.) Instead, he asked her to go to the nurse's station to wait for the pain to subside. Blakney's opinion about the danger of driving was later affirmed by Plaintiff's doctor. (PSOF ¶ 35.)

Plaintiff first contacted the Reasonable Accommodation Coordinator, Carmen Smith ("Smith") on April 11, 2018, by e-mail. (Emerson Dep. 50:20–52:5.) Smith gave her a form to fill out so her request could be processed. (*Id.* 55:3–14.) However, Plaintiff failed to complete and return the form, and had failed to specify the accommodation she was requesting. (*Id.* 56:6–9.) After six weeks Smith notified Plaintiff that she was administratively closing her

accommodation request because plaintiff had not specified the accommodation requested. (*Id.* 55:18—56:3.) She invited Plaintiff to contact her and reopen her request if she so desired, which she did several days later. (*Id.* 56:10—57:1.) After several months in which Plaintiff produced medical information from her doctor, it was agreed that the lactating room would be made available for her use when she had a flare up of her migraines. (PSOF ¶¶ 29—32.) Her doctor also stated that her medication should make it possible for her to resume normal work duties after a 30-minute rest. (*Id.* ¶ 35.)

Plaintiff's claim for hostile environment is based on criticism she received from her supervisors, Blakney and Hessie Dantzler, Assistant Chief of Surgery ("Dantzler"). (Emerson Dep. 58:6—10.) Plaintiff had asked them not to criticize her in front of co-workers. (*Id.* 58:14—17.) She also claims that Dantzler "checks my cards every time I stock, and she always finds something missing and reprimands me in front of co-workers." (*Id.* 59:8—12.) In 2017, Blakney told her that her hair style made her look 10 years older and then later told her that, due to her limp, he didn't think she would be "doing her job for another 15 years." (*Id.* 60:9—16.) These latter two comments are the basis for her complaint of age discrimination (Blakney is 56 years of age and Danzler is 61), as well as evidence of hostile environment. (*Id.*

63:16–23.) In 2017, Blakney, aware of Plaintff's sexual orientation, told her that another employee known to be gay was a "sweet Georgia Peach." (*Id.* 60:19–22.) He also told her that he thought homosexuality was "disgusting." (*Id.* 60:23–24.) Plaintiff says that Blakney is aware of her lifestyle because they have been friends for a number of years, and he recruited her to work for the Defendant. (*Id.* 62:18–22, 12:14–16.) Dantzler also told her that she "didn't condone [her] lifestyle." (*Id.* 61:20–21.) In 2018, Dantzler told a co-worker that "Gwen must have forgotten to take her meds today." (*Id.* 63:1–3.)

Her retaliation claim is apparently based on what she believes to be animus on Blakney's part for her having questioned standard operating procedure for care of reusable medical equipment. (*Id.* 65:3–68:9.) She had brought this matter to the attention of Amelia Busted ("Busted"), the person in charge of infection control. (*Id.* 65:3–8.) Plaintiff says that this was investigated by Busted which led Blakney to accuse her of making a false accusation. (*Id.* 66:7–67:3.) There was a meeting with her union representative that did not lead to any discipline, although there may be a note in her file concerning the matter. (*Id.* 67:15–68:7.) She acknowledges that Blakney did not consider her charge to be against him specifically. (PSOF ¶ 44.) She does not claim that this matter affected her work in any way. (*Id.*)

## II. DISCUSSION

Regarding the discrimination counts of Plaintiff's Complaint, Defendant agrees that Plaintiff is a member of protected groups as to age and sexual orientation, and that she was satisfying her employer's reasonable expectations, but bases his Motion on his contention that she did not suffer an adverse employment action, which is a necessary requirement for employment discrimination cases. *Lewis v. City of Chicago*, 496 F.3d 645, 652 (7th Cir. 2007).

This is also a requirement with respect to her retaliation claims. *Krause v. City of La Crosse*, 246 F.3d 995, 1000 (7th Cir. 2001) (citing *McDonald Douglas v. Green*, 411 U.S 792 (1973)). In addition to proving she engaged in a protected activity (here the filing of employment discrimination claims), she must also show that she suffered a materially adverse employment action. *Phelan v. Cook County*, 463 F.3d 773, 787 (7th Cir. 2006). A materially adverse employment action is one that materially changes the employment status. *Andrews v. CBOCS West, Inc.*, 743 F.3d 230, 235 (7th Cir. 2014), *rev'd on other grounds*, *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016). Defendant contends that Plaintiff cannot do so. He argues she was not discharged, she was not denied a promotion, and she did not suffer any type of adversary action, such as being docked for taking time off due to

illness or being denied benefits which similarly situated employees were granted.

With respect to Plaintiff's FMLA claim for retaliation, she must of course first show that she was denied family leave. In her brief Plaintiff contends that she was denied sick leave but, as we have seen, Plaintiff acknowledged in her deposition that every time she requested permission to take time off because of her debilitating headaches she was allowed to do so. Her only other suggestion of an adverse employment action is her claim that she suffered a hostile work environment. As we shall see, this claim is woefully short of necessary proof. In fact, she still works at the Agency under Blakney's supervision.

To constitute an adverse employment action based on hostile work environment, the conduct must be so objectively (and subjectively) outrageous as to constitute an alteration of the conditions of employment and create an abusive relationship. *Faragher v. Boca Raton*, 524 U.S. 775, 787 (1998). Conduct that is merely offensive is not sufficient. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993).

The evidence shows that Plaintiff and her chief alleged harasser, Blakney, were longtime friends. Plaintiff's employment at Defendant Agency was a result of Blakney's recruitment. Moreover, Blakney always gave Plaintiff glowing reports on her

annual performance reviews. (*See, e.g.,* 2016 Performance Appraisal, Pl.'s Stmt. of Facts, Ex. 21, Dkt. No. 27-22; 2017 Performance Appraisal, Pl.'s Stmt. of Facts, Ex. 22, Dkt. No. 27-23.) Based on Plaintiff's own deposition, the alleged harassment consisted of a few stray comments made by Blakney and Danzler over a period of several years. The only comments Plaintiff could remember at her deposition concerned her hairstyle which Blakney rudely opined it made her look ten years older. Another was that her limp probably meant that she would not continue working for the next fifteen years. One of them Plaintiff did not even hear directly, and another comment concerned another individual, the so-called "Georgia Peach." (Emerson Dep. 60:19—22.) As pointed out by Defendant, the various employment statutes are not meant to enforce high standards of civility. *Boss v. Castro*, 816 F.3d 910, 918 (7th Cir. 2016).

The final point raised by Plaintiff is that the Agency did not accommodate her disability. While the actual accommodation process took two years, the evidence discloses that the Agency was in fact accommodating her migraine headaches during the entire two-year period. When Plaintiff complained of the debilitating headaches, Blakney allowed her to take all the leave that she needed and requested. Plaintiff first starting using a quiet room during headache attacks on her own. She was never told that she

could not use a room, except for the one that Blakney considered unsafe. Although there were times when Blakney did not allow her to go home, it was because he was concerned about her ability to drive and insisted that she clear it with the Agency's nurse. His concern was proved justified when Plaintiff's doctor agreed that she should not drive after taking her medication. At all times when she requested relief, she was allowed to take it, either by going home or spending time at the nurse's station, and later, in a quiet room. When she requested a quiet room to allow her to wait out her headache, there was an active effort to find a suitable location. One of the rooms suggested by Plaintiff was considered unsafe. One of the reasons for the delay in final approval of the accommodation was Plaintiff's failure to complete the formal accommodation request requirements. The accommodation finally approved was the use of the lactating room as a quiet space. In any event, the evidence shows that Plaintiff was always accommodated through granting her leave, allowing her the use of a quiet room, or granting permission to go to the nurse's station. More importantly, she does not claim that she was ever forced to work through a migraine episode. There was no failure on the part of the agency to accommodate Plaintiff.

### III. <u>CONCLUSION</u>

For the reasons stated herein, Defendant's Motion for Summary Judgment is granted as to all counts. Judgement is granted in favor of the Defendant and against the Plaintiff.

**IT IS SO ORDERED.**

						_____
						Harry D. Leinenweber, Judge
						United States District Court

Dated: 2/10/2022